# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

MATTHEW WIGGINS,

     Plaintiff,

v.                                                            No. 1:21-cv-0670 KWR/DLM

T. HATCH, Warden, *et al.*,

     Defendants.

                                *Consolidated with* No. 1:22-cv-0279-KWR/DLM

MATTHEW WIGGINS,

      Plaintiff,

v.

FNU LNU, *et al*.,

     Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

**THIS MATTER** is before the Court on Defendants' Motion to Dismiss in Part, Motion for Partial Summary Judgment and Memorandum of Law in Support. (Doc. 73.) United States District Judge Kea W. Riggs referred this case to me pursuant to 28 U.S.C. § 636(b)(1)(B) and (b)(3) to conduct hearings, if warranted, and to perform any legal analysis required to recommend to the Court an ultimate disposition. (Doc. 33.)

---

[1] On May 12, 2023, United States District Judge Kea W. Riggs consolidated 1:21-cv-0670 and 1:22-cv-0279 in accordance with Plaintiff's intent to "consolidate the cases, rather than dismiss one as a duplicate filing, because he paid two filing fees." (Doc. 31 at 1.) The cases are identical and there are no claims unique to the later-filed case that require separate analysis. Because 1:21-cv-0670 was designated as the lead case, all citations in this PFRD refer to the docket for that case number unless otherwise specified.

This case involves two categories of claims: first, claims arising out disciplinary hearings for two incidents, and second, claims arising from alleged religious discrimination related to halal meals and Muslim pastoral visits. (*See* Doc. 72 at 9–10.) The Court recommends that Defendants' Motion to Dismiss in Part, Motion for Partial Summary Judgment (Doc. 73) be **GRANTED**. The Court further recommends that Plaintiff's claims in this consolidated matter be **DISMISSED**, and summary judgment be **GRANTED** in Defendants' favor, as set out herein. The Court further recommends that Plaintiff's motions to amend, join parties, and for miscellaneous relief (Docs. 82–85; 93–94; 97–100) be **DENIED**. The Court also recommends the motions filed in the member case be **DISMISSED**. (1:22-cv-0279 (Docs. 30; 32).)

## I.     Procedural Background

Plaintiff filed his initial Complaint on July 20, 2021, and amended complaints on July 27 and September 29, 2021. (Docs. 1; 3; 8.) On December 12, 2021, Judge Riggs dismissed without prejudice the complaint filed latest in time. (Doc. 10.) On November 30, 2022, Judge Riggs reopened this matter. (Doc. 25.) On March 3, 2023, Judge Riggs dismissed without prejudice Plaintiff's complaint once again but permitted him to file another amended complaint. (Doc. 28.) On March 21, 2023, Plaintiff filed the Amended Complaint that is the pleading under consideration.[2] (Doc. 29.) On May 15, 2023, Judge Riggs consolidated the lead case (1:21-cv-0670) with the member case (1:22-cv-0279). (Doc. 31.) On May 15, 2023, Judge Riggs dismissed two Defendants from the case and ordered the Clerk's Office to issue Notice and Waiver of Service Forms to the remaining Defendants. (Doc. 32.) Following a series of motions and orders directing service, all remaining Defendants were served and answered. (*See, e.g.*, Docs. 51; 62.) On

---

[2] Plaintiff's Amended Complaint identifies two groups of Defendants: the New Mexico Corrections Department and several of its employees (NMCD Defendants) and Food Service of Summit and one unnamed supervisor (Summit Defendants).

December 6, 2023, the undersigned ordered NMCD Defendants to file a *Martinez* Report,[3] which they filed on April 8, 2024, along with the dispositive motion currently before the Court. (Docs. 54; 70; 73.) On April 11 and 29, 2024, Plaintiff filed three documents the Court considers collectively as a response to NMCD's motion. (*See* Docs. 74; 76–77.) Briefing was completed when NMCD Defendants filed their Reply on May 13, 2024. (Doc. 79.)

On May 23, 2024, however, Plaintiff filed another two documents he labeled as responses. (Docs. 80–81.) On June 28, 2024, Plaintiff submitted a filing in the member case designated as a motion. (*See* 1:22-cv-0279 (Doc. 30).) On July 5, 2024, Plaintiff also filed two motions and two notices, which the Court interpreted as motions to join parties, amend the complaint, appoint a special master, and certify a class action. (Docs. 82–86.[4]) On July 8, 2024, the Court ordered the NMCD Defendants to file responses to those filings, and on July 12 and July 15, 2024, Defendants filed their responses. (*See* Docs. 86–92.) Plaintiff filed another two motions on July 15 and July 19, 2024, to which Defendants responded on July 31, 2024. (Docs. 93–95.) From August 1 to August 14, 2024, Plaintiff filed five documents reiterating the claims he made in his Amended

---

[3] Pursuant to the Court's Order permitting the NMCD Defendants to file certain exhibits to the *Martinez* Report under seal (Doc. 68), NMCD Defendants filed three iterations of the *Martinez* Report, each with different exhibits, under three levels of confidentiality: no restriction, restricted to case participants, and restricted only to the filing party and the Court (*See* Docs. 70 at 3–4 (Table of Exhibits); 70–72 (three *Martinez* Reports and exhibits).) The Court will refer to the exhibits by parallel citing to the document number and NMCD Bates Number. For clarity, the Court will explain the need for the citation convention and provide an example.

The Court will refer to the Table of Exhibits in the first *Martinez* Report to illustrate the citation convention. (Doc. 70 at 3–4.) In the *Martinez* Report and their motion, NMCD Defendants refer to the documents listed in the Table of Exhibits by the NMCD Bates Numbers. The first set of documents listed are identified by Bates Numbers "NMCD-0001–NMCD-0293." Counterintuitively, however, despite being listed first, those documents are not attached to the first *Martinez* Report but are instead attached to the second *Martinez* Report. (*See* Doc. 71-1–71-6.) Additionally, the remaining four sets of documents listed in the Table alternate between having been filed as exhibits to the third Report (case participants only) and the second Report (documents with no restriction). (*See* Doc. 70 at 3–4.) In other words, the way in which the exhibits were filed and numbered means that citation by NMCD Bates Numbers requires frequently referring to the Table of Exhibits to determine in which set of exhibits a document is located. To simplify determining the set of exhibits in which a document is located, the Court will, for example, cite to NMCD-0001 using the following convention: "(Doc. 71-1 at 1 (NMCD-0001).)"

[4] Plaintiff filed an identical copy of Document 82 in the member case. (*See* 1:22-cv-0279 (Doc. 32).)

Complaint and seeking further miscellaneous relief. (Docs. 96–100.) NMCD Defendants filed responses on August 15 and 19, 2024, which Summit Defendants joined. (Docs. 101–108.)

## II.     Relevant Law

### A.  Pro Se Prisoner Pleadings

In reviewing a pro se plaintiff's allegations, the Court applies the same legal standards applicable to pleadings that counsel drafts but liberally construes the allegations. *See Northington v. Jackson*, 973 F.2d 1518, 1520–21 (10th Cir. 1992). In other words, although the law the Court will apply to the case remains the same, a pro se plaintiff's "pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted). The latitude granted to pro se litigants extends beyond their pleadings, and "[c]ourts generally are 'lenient with pro se litigants . . . .'" *Quarrie v. Wells*, Civ. No. 17-350, 2020 WL 1683450, at *3 (D.N.M. April 6, 2020) (quoting *Jiron v. Swift*, 671 F. App'x 705, 706 (10th Cir. 2016)).

### B.  Rule 12(b)(6)

"In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also attached exhibits . . . and documents incorporated into the complaint by reference." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (quotations omitted). "To survive dismissal under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Murphy v. United States*, No. 20-cv-557 GBW/SMV, 2020 WL 6939716, at *4 (D.N.M. Nov. 25, 2020) (quoting *Leverington v. City of Colo. Springs*, 643 F.3d 719, 723 (10th Cir. 2011)) (quotation marks omitted). Stating a plausible claim does not require detailed factual allegations but does need more than a recitation of the elements of the claim or mere conclusory statements. *See id.*

(citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). When determining whether a claim is plausible, a court assumes the facts in the complaint are true and draws all reasonable inferences in the plaintiff's favor, but the Court need not accept legal conclusions. *See id.* (citing *Leverington*, 643 F.3d at 723; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). Indeed, a complaint may survive a Rule 12(b)(6) motion to dismiss even if it is unlikely a plaintiff will be able to prove the facts she alleges. *See Murphy*, 2020 WL 6939716, at *4. In other words, all a complaint must do is include allegations that, assuming they are true, make the claim for relief more than merely speculative, even if it is ultimately unlikely they can be proven to be true. *See Twombly*, 550 U.S. at 556.

### C.  Law Regarding Summary Judgment

On summary judgment, the initial burden is with the movant to show that he is entitled to judgment as a matter of law. *See Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992). Instead of disproving a claim, the movant only needs to show a lack of evidence on an essential element. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). If the movant meets that burden, the non-movant must come forward with specific facts from which a rational fact-finder could find in his favor. *Id.*

Granting summary judgment under Federal Rule of Civil Procedure 56 requires providing notice and opportunity to a nonmoving party to provide opposing affidavits. *See Hall*, 935 F.2d at 1111. Conflicting affidavits prevent the grant of summary judgment. *Id.* To create a material factual dispute, however, a nonmovant's affidavit must be based on "personal knowledge and set forth [material] facts that would be admissible in evidence; conclusory and self-serving affidavits

are not sufficient." *Id.* Additionally, "[a]ffidavits or other evidence offered by a nonmovant must create a genuine issue for trial . . . [and] it is not enough that the evidence be merely colorable or anything short of significantly probative." *Id.* (internal quotation marks and citation omitted). A pleading sworn to under penalty of perjury may be treated as an affidavit. *See Green v. Branson*, 108 F.3d 1296, 1301 n.1 (10th Cir. 1997) (citation omitted).

## III.    Undisputed Facts[5]

On December 28, 2023, District Judge Kea W. Riggs dismissed FNU Benninger pursuant to Plaintiff's Notice of Voluntary Dismissal. (Doc. 60.) Of the remaining individual Defendants, it does not appear the Amended Complaint alleges *anything* against Defendant Hatch or Defendant Frazier.[6] (*See generally* Doc. 29; *see also* Doc. 70 at 7.) The Amended Complaint further states that Defendant Jackson[7] and Defendant Jones informed Plaintiff two other corrections officers held animosity towards him, but there is no other mention nor allegation related to that Defendant. (Doc. 29 at 4; *see also* Doc. 70 at 7.) Plaintiff also mentioned Defendant Jones later in the Amended Complaint in what appears to be an incomplete sentence claiming Jones was part of a group of defendants who used an unspecified arbitrary restriction. (Doc. 29 at 14–15.) As to the remaining

---

[5] Plaintiff included statements in some, but not all, of the documents he filed affirming that the documents were sworn under penalty of perjury. (Docs. 8 at 6; 77 at 20; 82 at 6; 84 at 1; 85 at 1; 99 at 5.) The Court discusses below whether and to what extent those documents contain facts that create a genuine dispute of material fact on the relevant issues. *See Green v. Branson*, 108 F.3d 1296, 1301 n.1 (10th Cir. 1997) (treating the plaintiff's sworn complaint as an affidavit).

[6] In the exhibits Plaintiff attached to the Amended Complaint, there are three documents in which Defendant Frazier's name appears: a report she wrote regarding Plaintiff's 2022 rape of another inmate, a largely illegible, undated document, authored by Plaintiff, alleging that Frazier's report is against NMCD policy, and the disciplinary decision on the rape. (Doc. 29 at 46, 49, 54.) Plaintiff alleges no facts against Frazier, however, in the body of the Amended Complaint.

[7] Plaintiff includes, in the original complaint and in exhibits attached to the Amended Complaint, allegations and an Inmate Informal Complaint he filed against Defendant Jackson, the resulting Grievance, and a decision recommending that the Grievance be denied because the witness statements Plaintiff provided lacked names. (Docs. 1 at 11, 50–58; 29 at 77–81.) Those allegations and documents do not relate to the events in the Amended Complaint or to the one instance Plaintiff mentions Jackson within the Amended Complaint.

Defendant entities, the Amended Complaint states that Summit Food Services and the office of the Secretary of Corrections are being sued in their official capacities and the individual Defendants are being sued in their individual capacities. (*Id.* at 20; *see also* Doc. 70 at 7.)

Based on the Court's order to compile a *Martinez* Report (Doc. 54),[8] the NMCD Defendants conducted an investigation based on the following six matters they believed the Amended Complaint to be alleging: a March 4, 2021 use of force incident; a disciplinary case resulting from the use of force incident; a 2022 disciplinary case related to charges Plaintiff raped another inmate; lack of Islamic pastoral visits; Plaintiff's religious diet; and NMCD's grievance policy. (*See* Doc. 70 at 9–10.) The following is a summary of the findings on each of those matters based on the Court's review of the *Martinez* Report and the documents to which it cites. (Doc. 70.)

### A.     March 2021 Use of Force Incident[9]

NMCD has a documented use of force incident on March 5, 2021 (March 2021 Incident).[10]

---

[8] As required by Federal Rule of Civil Procedure 56, the Court's Order to compile a *Martinez* Report provided Plaintiff with notice of his right to controvert the facts presented in the *Martinez* Report and set a deadline providing him the opportunity to do so. (*See* Doc. 54 at 2, 5.) *See also Hall*, 935 F.2d at 1111.

[9] In granting the motion to seal exhibits to the *Martinez* Report, the Court stated that "to the extent the Defendants rely on sealed documents in a future dispositive motion, Plaintiff will be entitled to review them, and the Court will have to determine the most appropriate method for him to do so." (Doc. 68 at 1.) The Court notes that the Motion artfully avoids directly citing any sealed documents accessible only by the Court. Indeed, the Motion provides no factual background regarding the March 2021 Incident, and NMCD Defendants only directly cite to relevant information in the *Martinez* Report. In the Motion, however, NMCD Defendants cite Defendant Trujillo's Declaration, which refers to Court-only documents. (*See* Doc. 70-8 at 26 (NMCD-0551) (citing NMCD-0042–0108).) Accordingly, Court cites to those portions of the exhibits in this subsection. As the Court explains below, however, Plaintiff's claim related to the March 2021 Incident is barred. Therefore, because the information contained in those exhibits do not determine the outcome of Plaintiff's claim, they will remain sealed as accessible to the Court only. *See Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1241–42 (10th Cir. 2012) (highlighting that there is a strong presumption of public access of sealed documents exists where they are used to determine a litigant's substantive rights). The Court, however, does not find that the discussion of those, or any exhibits sealed to case participants only, requires filing this PFRD under seal. NMCD Defendants may file a motion requesting the PFRD be sealed if they believe it is necessary.

[10] In the Amended Complaint, Plaintiff alleges the incident occurred on March 4, 2021. (Doc. 29 at 3.) Defendants only have records for a documented use of force incident on March 5, 2021, so it appears Plaintiff's allegation that the incident occurred on March 4, 2021, is an innocent misremembering of the exact date. (*See* Doc. 70 at 10.) In any event, to the extent Plaintiff may dispute the date, his original complaint states the incident occurred on March 5, 2021. (Doc. 1 at 15.)

(Doc. 70 at 10.) A summary from the Use of Force Review states that on March 5, 2021, Plaintiff became verbally aggressive towards support staff maintaining telephones in a location identified as H2 A. (Doc. 71-2 at 1 (NMCD-0042).) The Review states that after responders arrived and evaluated Plaintiff, they believed he was under the influence of an unknown substance because he was acting and speaking threateningly. (*Id.*) Staff brought a wheelchair to transport Plaintiff to medical, but he refused to sit in it and officers called for a gurney to transport him. (*Id.*) The Review states that Plaintiff turned to Defendant Osorio in a threatening manner, and that the officer stated he sprayed Plaintiff with pepper spray to stop him. (*Id.*) The Review further states that while being escorted to medical, Plaintiff began spitting on Defendant Bobbio, who stated he pepper sprayed Plaintiff to prevent further assault. (*Id.*) The Review further states that while in medical, Plaintiff was combative, and staff had to restrain him to be able to conduct a medical evaluation. (Doc. 71-2 at 1 (NMCD-0042).) The Review also stated that medical staff administered Narcan, a drug used to treat opioid overdose, resulting in Plaintiff being compliant enough to transfer to medical segregation and being put on security observation. (*Id.*) The Use of Force review is based on information from two NMCD staff interviews conducted March 9, 2021. (*Id.* at 2 (NMCD-0043).) NMCD also attached over 60 pages of documentation detailing the incident, which support the account of the event as described above.[11] (Doc. 71-2 at 3–67 (NMCD-0044–0067).)

---

[11] The Amended Complaint alleges Plaintiff requested that he be moved to a different pod on the day of the March 2021 Incident. (Doc. 29 at 3–4.) The Amended Complaint does not include allegations regarding Plaintiff's conduct before the NMCD Defendants arrived or indicate Plaintiff's belief as to why they arrived. The original complaint, however, alleged that Plaintiff received a threatening note from the inmate passing by delivering meals, prompting him to "freak[] out" and have a mental breakdown. (Doc. 1 at 16.) The original complaint then alleged Plaintiff began yelling for officers outside the pod but that the officer in the pod thought he was talking to him. (*Id.*) Both the original complaint and the Amended Complaint corroborate Plaintiff's erratic behavior prior to NMCD Defendants arriving and that after being pepper sprayed, he spit out repeatedly to get the pepper spray out of his mouth. (Docs. 1 at 16–17; 29 at 4.) Plaintiff and NMCD's accounts are not necessarily at odds, but the Court acknowledges the tension between the two regarding how the March 2021 Incident began. That tension is not material in this matter because, as the Court will explain, it bears on the merits of Plaintiff's challenge to conviction resulting from the March 2021 Incident, which is barred under Tenth Circuit precedent. *See infra* Section V(A)(i).

**B.      Disciplinary Proceedings Resulting from the March 2021 Incident**

On March 15, 2021, Plaintiff was found guilty of a "Major Level report." (Doc. 72-4 at 1 (NMCD-0396).) The summary of Plaintiff's disciplinary hearing states that he was initially present at the hearing. (*Id.* at 3 (NMCD-0398).) During the hearing, however, Plaintiff became uncooperative, submitted a page of notes, and was escorted out after standing up and attempting to leave the hearing area. (*Id.*) In those notes, Plaintiff alleged that the statements the officers provided for the hearing were to retaliate against him due to bias and because they want him gone. (Doc. 72-4 at 6, 11 (NMCD-0401, 0406).)  He further alleges that the officers initiated the incident not because he was combative, but rather because he was asking to speak with the floor officer. (*Id.*) Statements of two facility staff members maintaining the inmate phones claim that Plaintiff was yelling threatening profanities at them, prompting them to contact the NMCD officers for assistance. (Doc. 72-4 at 13–14 (NMCD-0408–0409).) The statements that the officers who responded to the request for assistance, and who were involved in the incident, provided for the disciplinary proceedings reflect the events as described in the previous subsection. (*Id.* at 15–25 (NMCD-0410–0420).) Plaintiff lost good time credits as a result of the conviction. (Doc. 72-3 at 14 (NMCD-0394).) Plaintiff filed a petition for writ of habeas corpus in state court seeking to overturn the conviction for the March 2021 incident.[12] (Doc. 70 at 21.)

**C.      2022 Disciplinary Proceeding Regarding Rape of Another Inmate**

Defendant Sedillo reviewed a report by Defendant Frazier concluding that the allegation by another inmate that Plaintiff had raped him was substantiated, and he subsequently recommended a major level hearing be scheduled on the matter. (Docs. 70-8 at 14–15 (NMCD-0539–0540); 72-3 at 5 (NMCD-0385).) Defendant Wagner presided as the hearing officer at the

---

[12] The petition also seeks to overturn Plaintiff's 2022 conviction for the rape of another inmate. The facts surrounding that incident and the subsequent disciplinary proceedings are detailed in the next subsection.

September 29, 2022 administrative disciplinary hearing. (Docs. 70-8 at 17 (NMCD-0542); 72-3 at 1 (NMCD-0382).) On October 6, 2022, Wagner found Plaintiff guilty of the major level charge of rape. (Doc. 72-3 at 1, 4–5 (NMCD-0381, 0383–0384).) Plaintiff lost all good time credits as a result of the conviction. (Doc. 72-4 at 1 (NMCD-00396).)

### D.     Lack of Muslim Pastoral Visits

On April 12, 2022, Plaintiff submitted an Inmate Informal Complaint requesting that the facility chaplain consult with qualified individuals of the Islamic faith to provide weekly pastoral visits. (Doc. 72-1 at 26 (NMCD-0319).) Plaintiff submitted an Inmate Grievance on May 2, 2022, which Defendant Sedillo responded to on May 17, 2022. (*Id.* at 25 (NMCD-0318).) The Grievance was deemed resolved because it had been NMCD policy not to receive outside volunteers for the preceding two years due to the COVID-19 pandemic. (*Id.*) The Grievance response stated the facility was in contact with their Islamic volunteer to determine whether he was willing to return. (*Id.*) Plaintiff submitted a Departmental Appeal on June 1, 2022, which Defendant Maciel responded to on July 25, 2022. (*Id.* at 27 (NMCD-0320).) The appeal was denied after it was determined that Sedillo correctly stated why Plaintiff had not received a pastoral visit up to that point. (*Id.*) Maciel informed Plaintiff that no Islamic volunteers were willing to return to the facility and follow all the institutional requirements, that NMCD was not prohibiting him from practicing his religious beliefs, and that his appeal failed to provide any additional evidence. (*Id.*) The denial stated that Plaintiff exhausted his administrative remedies and that the issue was not subject to further appeal. (*Id.*)

### E.     Religious Diet

On March 21, 2011, a chaplain approved a religious diet for Plaintiff. (Doc. 70-5 at 2–3 (NMCD-0449–0450).) In October 2011, Plaintiff filed a civil rights complaint, which the parties

dismissed in May 2016, after entering into a stipulated settlement. (*Id.* at 4–6 (NMCD-0451–0453).) In November 2016, Plaintiff filed an Inmate Informal Complaint alleging that the fruit he was being served was not served whole in accordance with the stipulated settlement. (Doc. 72-1 at 3–4 (NMCD-0296-0297).) NMCD staff responded to the complaint on November 21, 2016, informing Plaintiff that the settlement stated "In the event the facility serves fresh fruit, plaintiff's will be served whole[,]" but that as he stated, the facility serves canned fruit, so the provision on fresh fruit is inapplicable. (*Id.*) On November 21, 2016, Plaintiff filed an Inmate Grievance complaining of the issue, which NMCD denied on December 12, 2016, for the same reason. (*Id.* at 1–2 (NMCD-0294-0295).)

On February 4, 2021, Plaintiff filed an Inmate Informal Complaint complaining that he was not receiving some of the meals in the rotation from the 2016 Settlement. (*Id.* at 9 (NMCD-0302).) NMCD staff responded to that complaint on February 11, 2021, informing Plaintiff that food services were no longer run by the same company. (*Id.*) Plaintiff filed an Inmate Grievance complaining of the same issue on March 15, 2021, which NMCD staff denied on March 18, 2021. (*Id.* at 7 (NMCD-0302).)

On April 19, 2021, Plaintiff filed an Inmate Informal Complaint complaining that halal meals were not provided as agreed in the 2016 Settlement. (*Id.* at 13 (NMCD-0306).) The Complaint was responded to on April 21, 2021, informing Plaintiff that he is on the list for halal meals and the trays are checked before being sent to individuals on the list. (*Id.*) Plaintiff submitted an Inmate Grievance that he signed as being submitted on April 22, 2021, but the Grievance was denied as untimely because the Grievance Officer asserted, and separately averred, that it was not received until June 9, 2021. (*Id.* at 12 (NMCD-0305); Doc. 70-8 at 4 (NMCD-0529).) On May 6, 2023, Plaintiff filed another Inmate Informal Complaint complaining of the same issue. (Doc. 72-

1 at 23 (NMCD-316).) The Complaint was denied, informing Plaintiff the meals are provided according to the facility's dietitian's guidance and that the religious cook was instructed to alternate the available meals that comply with Plaintiff's religious requirements. (*Id.*) On May 13, 2023, Plaintiff filed an Inmate Grievance on the issue, and it was denied on June 2, 2023, for the same reason. (*Id.* at 21–22 (NMCD-0314–0315).)

### F.    NMCD Grievance Policy

> In general, the inmate grievance process has three steps which an inmate must timely complete in order to exhaust his or her administrative remedies: (1) submission of an informal complaint using the Informal Complaint Form; (2) submission of an inmate grievance using the Inmate Grievance Form; and (3) submission of a departmental appeal after receiving the decision on the grievance.

(*See* Docs. 70 at 17; 70-1 at 9–16 (NMCD-0336–0343) (NMCD grievance policy).) Plaintiff alleges, with no explanation, that a subsection of the NMCD grievance policy is unconstitutional. (Doc. 29 at 15 (citing NMCD "Policy 150500, Page 6, Letter C").)

### IV.   Plaintiff's Amended Complaint and Subsequent Filings

Plaintiff alleges that he experienced a retaliatory beating by several NMCD Defendants during the March 2021 incident for having previously expressed grievances about the housing pod to which he was assigned. (Doc. 29 at 3–4, 12–13.) In connection with the March 2021 incident, Plaintiff alleges excessive force and retaliation claims in violation of his First, Fifth, Eighth, and Fourteenth Amendment rights under 42 U.S.C. § 1983. (*See* Docs. 29 at 11–15; 70 at 10–14.) Plaintiff seems to allege that the disciplinary case following the March 2021 incident, for which he was convicted, was the result of retaliatory action. (*See* Docs. 29 at 4–5, 12–13; 70 at 20–21.) Plaintiff also mentions the 2022 conviction for his rape of another inmate and appears to claim that the disciplinary case and conviction were the product of retaliation, but he does not explain the basis for that argument. (*See* Docs. 29 at 13; 70 at 22–23.) However, the "retaliation" to which

Plaintiff refers may be the loss of good time credits as a result of the March 2021 Incident and 2022 rape disciplinary actions. (Docs. 72-3 at 14 (NMCD-0394); 72-4 at 1 (NMCD-00396).) Lastly, Plaintiff alleges he is being discriminated against on the basis of religion because he is not receiving halal meals or Muslim pastoral visits. (*See* Docs. 29 at 6–10; 70 at 24–33.)

As stated above, Plaintiff also submitted four filings after briefing on NMCD's motion was completed. (Doc. 86.) The following are short descriptions of those documents. Plaintiff seeks to add additional parties and appoint a special master. (Doc. 82.) Plaintiff seeks to add other parties and certify the matter as a class action. (Doc. 83.) Plaintiff asserts allegations involving an incident between an NMCD officer who is not a defendant and one of the inmates Plaintiff seeks to join. (Doc. 84.) Plaintiff filed a declaration authored by an individual identified as a halal cook alleging Plaintiff's diet is not kosher and asking that the halal cook be joined as a plaintiff.[13] (Doc. 85.)

Since submitting those filings, Plaintiff has filed additional documents. (*See* Docs. 93–94; 96–100.) Those filings largely reiterate the issues he raised in the four filings to which the Court ordered responses: permission to add parties and claims; his request that a class be certified; and his request that the Court appoint a special master or counsel. (*See* Docs. 94; 96–100.)

Plaintiff also requests the following distinct miscellaneous relief in the additional documents: (1) a Court order denying any requests from Defendants that he not be provided additional time to respond to a given filing (Doc. 93); (2) a Court order that his grievances be considered in a process other than the administrative system available to him as an inmate (Doc. 96 at 4); (3) relief on the basis that grievances are often left unanswered by NMCD (*id.* at 11–13); and (4) default judgment against Summit Defendants (Doc. 97).

---

[13] Summit Defendants note that the declaration appears to have been written by Plaintiff but signed by the declarant, Dakota Thiel. (Doc. 91 at 1.) Because the declaration is sworn under penalty of perjury and Summit Defendants do not provide any evidence to the contrary, the Court will presume the declaration was authored by Thiel.

## V.    Analysis[14]

In his Amended Complaint, Plaintiff brings claims pursuant to 42 U.S.C. § 1983 for violations of his First, Fifth, Eighth, and Fourteenth Amendment rights. (Doc. 29 at 6–15.) As stated above, his claims fall under two general categories: first, claims arising out disciplinary hearings for two incidents; and second, claims arising from alleged religious discrimination related to receiving halal meals and Muslim pastoral visits. Plaintiff also challenges the constitutionality of a subsection of NMCD's policy, seeks compensatory damages and injunctive relief, and lists defendants against whom he made no allegations or merely mentioned in the Amended Complaint. (*See id.* at 4, 10, 14.) Lastly, Plaintiff requests permission to add parties and claims, to certify the matter as a class action, to appoint a special master or counsel (*see generally* Docs. 94; 96–100), and other miscellaneous relief (*see* Docs. 93; 96 at 4, 11–13).

The Court recommends dismissing, as a matter of law, the following claims for reasons it will expand upon below: religious discrimination claim regarding halal meals; compensatory damages; injunctive relief against individual-capacity defendants and money damages against official-capacity defendants; and a challenge to the constitutionality of a NMCD policy subsection.

The Court further recommends granting summary judgment in Defendants' favor as to Plaintiff's claims related to the disciplinary actions and his religious discrimination claim regarding Muslim pastoral visits.

Lastly, the Court construes Plaintiff's requests for miscellaneous relief as motions and recommends denying them for reasons it will expand upon below.

---

[14] As noted previously, Plaintiff submitted Document 82 as a motion and filed an identical copy in the member case. (*See* Doc. 82; 1:22-cv-0279 (Docs. 30; 32).) This filing, however, asserts only generalized allegations that the *Martinez* Report contains false information but no claim for relief. (*See* Doc. 82; 1:22-cv-0279 (Doc. 30).) Accordingly, Document 82 does not affect the analysis below, and the Court recommends denying it, to the extent it could be construed to request relief.

### A. Dismissal as a Matter of Law

  i.  *Plaintiff's claim regarding his halal meals is unexhausted.*[15]

"The Prison Litigation Reform Act (PLRA) provides that a prisoner cannot bring an action 'with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted.'" *Huggins v. Reilly*, 679 F. App'x 679, 681 (10th Cir. 2017) (quoting 42 U.S.C. § 1997e(a)) (citing *Jones v. Bock*, 549 U.S. 199, 211 (2007) ("[E]xhaustion is mandatory under the PLRA . . . .")); *see also Beals v. Jay*, 730 F. App'x 633, 636 (10th Cir. 2018). To exhaust available administrative remedies, a prisoner must comply with "*all* of the prison's grievance procedures . . . ." *Beals*, 730 F. App'x at 636 (citation omitted). In other words, "[a]n inmate who begins the grievance process but does not complete it is barred from pursuing a federal claim under the PLRA for failure to exhaust his administrative remedies." *Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1112 (10th Cir. 2007) (brackets omitted) (quoting *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002)).

  The Court recommends dismissing Plaintiff's claim regarding his halal meals as unexhausted. NMCD laid out its administrative grievance system in great detail in the *Martinez* Report. (Doc. 70 at 15–19.) As stated above, however, despite filing four administrative grievances regarding his halal meals since the stipulated settlement in 2016, Plaintiff did not complete the administrative process for any of them. (Docs. 70-8 at 3–4 (NMCD-0528–0529); 72-1 at 33–34 (NMCD-0326–0327).) In a May 23, 2024 filing, Plaintiff alleges he attempted to administratively exhaust his claims but was unable to do so. (Doc. 81 at 3.) It is unclear whether Plaintiff claims he

---

[15] In an April 24, 2024 Letter, Plaintiff argues that the Court should reject Defendants' exhaustion argument as it relates to the March 2021 Incident. (Doc. 76 at 1.) The Court does not recommend dismissal of his March 2021 Incident claim on exhaustion grounds, so his argument is inapposite. (*See infra* Section V(B)(i).) Additionally, the April 24 letter does not address whether or how Plaintiff's exhaustion argument applies to his claim regarding halal meals. (Doc. 76 at 1.) Accordingly, the Court finds that Plaintiff's argument does not affect the following analysis.

circumvented the prescribed administrative process by filing the necessary document for the final step of the grievance process with the central office directly or whether he merely notified it after filing according to the prescribed process. (*Id.*) Plaintiff also attaches a series of exhibits allegedly proving he sent filings to be processed multiple times. (*Id.*) However, the exhibits merely show that his account activity included a number of postage fees; they do not include information on the intended recipient or their purpose. (*Id.* at 7–10.) The Court finds that Plaintiff fails to demonstrate he completed the administrative process because, despite his allegations that he "submit[ed] numerous grievance forms[,] . . . 'substantial compliance is insufficient.'" *See Beals*, 730 F. App'x at 636 (quoting *Fields*, 511 F.3d at 1112).

Additionally, the Court is not persuaded by Plaintiff's claim that Defendants intentionally failed to take action on the filings he alleges he sent in connection with his halal meals claim. NMCD acted on Plaintiff's claim regarding Muslim pastoral visits and even reached a settlement with him in 2016 on his halal meals, but Plaintiff does not explain why they would have failed to do so regarding his filings on his more recent halal meals claim. (Docs. 70-8 at 13–14 (NMCD-0538–0539); 72-1 at 25–27 (NMCD-0318–0320).) Plaintiff's "conclusory allegations without specific supporting facts[, therefore,] have no probative value and cannot create a genuine issue of fact." *See Stegall v. Bernalillo Cnty. Metro. Det. Ctr.*, No. CV 10-1262 RB/WPL, 2012 WL 13081853, at *2 (D.N.M. May 31, 2012), *R&R adopted as modified*, 2012 WL 13076963 (D.N.M. July 2, 2012) (citations omitted). Accordingly, the Court recommends dismissing this claim without prejudice for failure to exhaust his administrative remedies.

      ii.    *Plaintiff's claims for compensatory damages are restricted to his claim related to the March 2021 Incident.*

To the extent Plaintiff claims he is entitled to compensatory damages (Doc. 29 at 16), the Court recommends dismissing his claims except as to the March 2021 Incident. Under 42 U.S.C. § 1997e(e), "[n]o Federal civil action may be brought by a prisoner . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act . . . ." Section 1997e(e), however, does not restrict Plaintiff's access to the courts, it merely restricts the availability of damages for his claims. *See Fletcher v. Raemisch*, 768 F. App'x 825, 827 (10th Cir. 2019) (noting that "42 U.S.C. § 1997e(e) is a permissible restriction on the availability of damages"). In other words, Plaintiff is not restricted in the claims he may bring, but he may only recover compensatory damages for claims resulting from physical injury or a sexual act. *See Wooten v. Hayden*, No. 21-3065, 2021 WL 5711091, at *3 (10th Cir. Dec. 2, 2021) (affirming a district court decision finding a claim for compensatory damages barred under § 1997e(e) for failure to identify a physical injury or sexual act). The Amended Complaint alleges physical harm only during the March 2021 Incident, so the Court recommends dismissing with prejudice Plaintiff's request for compensatory damages for all other claims.

      iii.    *Plaintiff may not seek injunctive relief against individual-capacity defendants or money damages against official-capacity defendants.*

To the extent Plaintiff seeks relief in the form of injunctive relief against individual-capacity defendants and money damages against official-capacity defendants (Doc. 29 at 16), the Court recommends finding those claims fail as a matter of law. *See Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011) ("Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief.") (citation omitted). Accordingly, to the extent Plaintiff makes them, the Court recommends dismissing with

prejudice any claims for injunctive relief against individual-capacity defendants and money damages against official-capacity defendants.

>    iv.   *Defendants against whom there are insufficient allegations should be dismissed for failure to plead facts sufficient to state a claim.*

In the Order dismissing Plaintiff's third complaint,[16] Judge Riggs stated that "[a] successful § 1983 complaint must 'make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her.'" (Doc. 28 at 5 (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008)).) Moreover, Judge Riggs specifically highlighted that Plaintiff listed a number of defendants but "fail[ed] to describe how any of them were personally involved in the alleged wrongdoing." (*Id.* at 4.) Plaintiff received thirty days to amend his complaint because "[p]ro se prisoners are ordinarily given an opportunity to 'remedy defects potentially attributable to their ignorance of federal law.'" (*Id.* at 6 (quoting *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990)).)

As stated above, however, the Amended Complaint does not present any allegations against Defendants Hatch or Frazier. Additionally, Plaintiff mentions Defendants Jackson and Jones but does not make any allegations of misconduct or present any claims against them. (Doc. 29 at 4, 10.) Accordingly, the Court finds that, even considering his pro se status, Plaintiff received sufficient notice "that to state a claim in federal court, a complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe Cnty. Just. Ctr.*, 492 F.3d 1158, 1164 (10th Cir. 2007).

---

[16] The Court notes that the Order dismissing Plaintiff's third complaint limited its review to that document and did not consider the first complaint because it was performing a screening under 28 U.S.C. § 1915A. (Doc. 28 at 1–2.) Pursuant to § 1915A, a court may "dismiss a prisoner civil rights complaint sua sponte 'if the complaint . . . is frivolous, malicious, or fails to state a claim on which relief may be granted.'" (*See* Doc. 28 at 3–4 (quoting 28 U.S.C. § 1915A(b)).) Accordingly, at that stage in the case, the Court's review was properly limited to the third complaint.

Accordingly, the Court recommends dismissing without prejudice Defendants Hatch, Frazier, Jackson, and Jones because Plaintiff failed to allege sufficient facts to state a claim against them.

<i>v.      Challenge to the Constitutionality of NMCD Grievance Policy</i>

Lastly, the Court recommends dismissing Plaintiff's challenge to the constitutionality of NMCD's grievance policy. (Doc. 29 at 15.) The Tenth Circuit has stated that "there is no independent constitutional right to state administrative grievance procedures[, n]or does the state's voluntary provision of an administrative process create a liberty interest in that process. *See Boyd v. Werholtz*, 443 F. App'x 331, 332 (10th Cir. 2011) (citations omitted). Accordingly, the Court recommends dismissing with prejudice Plaintiff's challenge to the grievance policy.

**B. Summary Judgment**

<i>i.      Plaintiff's claims related to his disciplinary actions are barred under Heck.</i>

The Supreme Court has held that a state prisoner may not recover damages for allegedly unconstitutional conduct whose unlawfulness would render the underlying conviction or sentence invalid unless the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by an authorized state tribunal, or called into question by the issuance of a writ of habeas corpus. *See Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994). The Supreme Court extended that principle to prison disciplinary convictions that deprive a prisoner of good time credits. *See Edwards v. Balisok*, 520 U.S. 641, 646–48 (1997) (holding that a claim was not cognizable where "[t]he principal procedural defect complained of by respondent would, if established, necessarily imply the invalidity of the deprivation of his good-time credits"). The Tenth Circuit has applied *Heck* and *Edwards* to circumstances nearly identical to those in this matter. In *Miller v. Edminsten*, the plaintiff's retaliation claim alleged that "certain of the defendants, in retaliation for his allegedly exercising his First Amendment rights, filed false

19

disciplinary charges against him that ultimately resulted in his placement in segregation and the deduction of good time credits." 161 F. App'x 787, 789 (10th Cir. 2006). The Tenth Circuit determined that because "a judgment in Miller's favor on his retaliation claim would necessarily imply the invalidity of his disciplinary convictions, Miller must first successfully challenge those disciplinary convictions in a habeas proceeding before proceeding on his § 1983 claim." *Id.* (citing *Edwards*, 520 U.S. at 648; *Heck*, 512 U.S. at 487). Accordingly, the Tenth Circuit determined that Miller had failed to state a claim of retaliation upon which relief could be granted. *Id.*

As stated above, Plaintiff lost good time credits as a result of the March 2021 Incident and 2022 rape convictions. (Docs. 72-3 at 14 (NMCD-0394); 72-4 at 1 (NMCD-00396).) In his Amended Complaint and administrative filings, Plaintiff alleges that the disciplinary actions were initiated to retaliate against him and to prolong his sentence. (*See* Docs. 29 at 11, 13; 70 at 19–21.) However, the state habeas petition seeking to overturn the disciplinary actions remains pending (*see* Doc. 70 at 23–24), so the underlying convictions necessarily have not been nullified in any of the ways *Heck* identified as prerequisites for obtaining relief, *see Heck*, 512 U.S. at 486–87. In other words, as the Tenth Circuit stated, Plaintiff "must first successfully challenge those disciplinary convictions in a habeas proceeding before proceeding on his § 1983 claim." [17] *Miller*, 161 F. App'x at 189. To be sure, if Plaintiff prevails in the habeas proceedings, he may bring a challenge. As his state proceeding is still pending, the Court finds that Plaintiff's allegations of constitutional violations based on the disciplinary actions for the March 2021 Incident and the 2022 rape are barred under *Heck*. Accordingly, the Court recommends granting summary

---

[17] In an April 29, 2024 filing and May 23, 2024 filing, Plaintiff raises a number of arguments related to the disciplinary actions that resulted in convictions and loss of good time credits. (*See* Docs. 77 at 12–13; 81 at 4.) He does not, however, establish that the convictions have been reversed or otherwise nullified. Instead, Plaintiff's arguments strike at whether the convictions were legitimate, which is a matter for the state court to consider in the pending habeas proceedings.

judgment in NMCD Defendants' favor and dismissing Plaintiffs claims related to the disciplinary actions without prejudice. *See Fottler v. United States*, 73 F.3d 1064, 1065 (10th Cir. 1996) ("When a § 1983 claim is dismissed under *Heck*, the dismissal should be without prejudice.") (citations omitted); *see also Adams v. Dyer*, 223 F. App'x 757, 761–62 (10th Cir. 2007) (affirming a grant of summary judgment under *Heck* without prejudice in favor of a group of defendants).

> ii.   *The Court recommends granting summary judgment on Plaintiff's religious discrimination claims regarding a lack of Muslim pastoral visits.*

The Religious Land Use and Institutionalized Persons Act (RLUIPA) states, in relevant part:

> No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution—
>
> (A) is in furtherance of a compelling governmental interest; and
>
> (B) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a)(1). Thus, to present a claim under the RLUIPA, a prisoner "must demonstrate he wishes to engage in (1) a religious exercise (2) motivated by a sincerely held belief, which exercise (3) is subject to a substantial burden imposed by the government." *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1312–13 (10th Cir. 2010) (citations omitted). Under the RLUIPA, religious exercise is substantially burdened,

> when a government (1) requires participation in an activity prohibited by a sincerely held religious belief, or (2) prevents participation in conduct motivated by a sincerely held religious belief, or (3) places substantial pressure on an adherent either not to engage in conduct motivated by a sincerely held religious belief or to engage in conduct contrary to a sincerely held religious belief, such as where the government presents the plaintiff with a Hobson's choice—an illusory choice where the only realistically possible course of action trenches on an adherent's sincerely held religious belief.

*Id.* at 1315. The standard for demonstrating a substantial burden on religious exercise under the Free Exercise Clause of the First Amendment is the same. *See Williams v. Hansen*, 5 F.4th 1129, 1134 (10th Cir. 2021) ("[A]nything that constituted a substantial burden under RLUIPA would also have constituted a substantial burden under the First Amendment.").

Here, the Court finds that Plaintiff fails to establish he is being substantially burdened by NMCD's inability to secure volunteers for Muslim pastoral visits. In *Abdulhaseeb*, the Tenth Circuit considered a plaintiff's claims that the RLUIPA required the prison to pay for a Muslim spiritual leader and to pay for soft-cover Islamic books. 600 F.3d at 1320. The Tenth Circuit, however, affirmed the district court's holding that the "RLUIPA requires governments to refrain from substantially burdening religion, not to affirmatively subsidize religion." *Id.* (citing 42 U.S.C. § 2000cc-3(c)) (subsequent citations omitted). Additionally, in *Ajaj v. Federal Bureau of Prisons*, the Tenth Circuit affirmed the United States District Court for the District of Colorado's decision finding that the plaintiff had not been substantially burdened when the defendant denied his requests for video conferencing with his family because he failed to establish that his religion precluded maintaining that relationship though alternative means of communication. No. 08-CV-02006-MSK-MJW, 2011 WL 902440, at *6 (D. Colo. Mar. 10, 2011), *aff'd*, 561 F. App'x 647, 660–61 (10th Cir. 2014) ("[W]e see no reversible error in the district court's orders.").

It follows that if, in *Abdulhaseeb*, the Tenth Circuit determined that a prison does not place a substantial burden on an inmate's religious exercise by declining to pay for a Muslim spiritual leader under, then NMCD does not place a substantial burden on Plaintiff merely because it could not find volunteers for the pastoral visits he requests. Additionally, if in *Ajaj*, the Tenth Circuit found no reversible error in the district court's determination, then Plaintiff is not substantially burdened because he did not establish that in-person pastoral visits are required by his religious

beliefs or that alternative forms of communication such as telephone calls or written correspondence are insufficient or prohibited.

Plaintiff further alleges that he used to receive pastoral visits but no longer does because of administrative corruption and discrimination. (Doc. 77 at 11.) The record of NMCD's attempts to obtain volunteers belies those allegations. (*See* Doc. 70-8 at 21–24 (NMCD-0546–0549).) In a May 23, 2024 filing, Plaintiff claims that Defendants state he never requested a pastoral visit. (Doc. 81 at 2.) However, as the Court highlighted, Defendants attempted to locate a volunteer in response to his requests. (*See* Doc. 70-8 at 21–24 (NMCD-0546–0549).) Plaintiff's "conclusory allegations without specific supporting facts[, therefore,] have no probative value and cannot create a genuine issue of fact." *See Stegall*, 2012 WL 13081853, at *2 (citations omitted). Accordingly, neither Plaintiff's Complaint nor the record demonstrate that Plaintiff is substantially burdened merely because NMCD cannot obtain a volunteer for Muslim pastoral visits. Therefore, the Court recommends granting summary judgment and dismissing with prejudice Plaintiff's religious discrimination claim relating to Muslim pastoral visits.

### C.   The Court recommends denying Plaintiff's requests made in his additional filings.

As the Court stated above, Plaintiff has submitted a number of filings in which he reiterates his claims and requests a variety of miscellaneous relief. (*See* Docs. 82–85; 93–94; 96–100.) To the extent Plaintiff reiterated the claims he raised in his Amended Complaint, the Court will not discuss those portions of the filings. Accordingly, the Court addresses only the arguments Plaintiff did not raise in the Amended Complaint.

      *i.*      *The Court recommends denying Plaintiff's request to join parties and amend the complaint.*

Federal Rule of Civil Procedure 20(a)(1) allows permissive joinder of parties as plaintiffs if: "(A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action."

Federal Rule of Civil Procedure Rule 15(a) provides that leave to amend "shall be freely given when justice so requires." "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Zia Tr. Co. v. Montoya*, CIV 08-0077 KBM/CEG, 2008 WL 11362045, at *2 (D.N.M. July 3, 2008) (quoting *Frank v. United States*, 3 F.3d 1357, 1365 (10th Cir. 1993)). Denying a request to amend is left to a court's discretion, but a court abuses its discretion if it does not provide any justifying reason for the denial. *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

As a preliminary matter, the Court highlights Plaintiff's failure to attach a proposed amended complaint as required by the local rules. D.N.M. LR-Civ. 15.1 ("A proposed amendment to a pleading must accompany the motion to amend.") Plaintiff's failure to do so leaves the Court unable to "fully consider whether to grant leave to" amend the complaint. *Alpha, LLC v. Land Strategies, LLC*, No. CV 18-648 KG/JFR, 2019 WL 2468080, at *3 (D.N.M. June 13, 2019).

Plaintiff seeks to join Alejandro Ramirez, Frankie Esquibel, and Dakota Thiel as plaintiffs in this matter. (*See* Docs. 82 at 1; 83 at 1.) Plaintiff seeks to add Ramirez in connection with allegations related to a disciplinary action. (Doc. 82 at 1–3.) Plaintiff filed unverified declarations from Esquibel and Thiel as separate documents. (Docs. 84; 85.) The declaration from Esquibel alleges a dispute with an NMCD officer took place in June 2024. (Doc. 84 at 1.) The declaration

from Thiel alleges he and Plaintiff receive food that is kosher, which Thiel appears to equivocate with halal food without explanation. (Doc. 85 at 2.) Plaintiff seeks to add those individuals to the portion of his complaint related to "systemic problems traceable to poor hiring practices, inadequate training or insufficient supervision." (Doc. 83 at 1.) The Court recommends denying the request to join these prospective plaintiffs and amend the complaint for the following reasons.

Multiple-plaintiff prisoner litigation has such pervasive impracticalities associated with it that many federal district courts find permissive joinder is not feasible. *See Bastian v. Jaramillo*, Civ. No. 21-350 WJ/JFR, 2023 WL 4182806, at *2 (D.N.M. June 21, 2023) (gathering cases).  For instance, as the Court will explain below, Plaintiff cannot represent the prospective plaintiffs. Consequently, if the prospective plaintiffs were added, "any pleading filed [would need to] bear [each of] their signatures pursuant to Rule 11(a)." *Id.* "This heightens the risk that the pleadings filed may not represent the position of [all plaintiffs], which will leave the Court in a situation of uncertainty in ruling on motions and otherwise hinder its ability to efficiently manage its docket." *Id.* Moreover, "[n]o matter how efficient joinder may appear at the beginning of a case, prisoner-plaintiffs frequently are unable to provide pleadings signed by all parties[,] . . . leaving the Court to puzzle out who is seeking relief against whom and on whose behalf." *Id.* (quoting *Good v. Washington*, Case No. 2:21-cv-18, 2021 WL 2439268, at *5 (W.D. Mich. June 15, 2021)). Indeed, although the Court resolved the matter without conflict, the Court has already encountered an instance where the author of a filing is in some doubt. *See supra* Section IV (noting Summit Defendants highlighted that Thiel's declaration appears to have been written in Plaintiff's handwriting).

In any event, setting aside the exceptional difficulty of multiple-plaintiff prisoner litigation, there is "nothing to tie the [prospective plaintiffs] together in a logical relationship regarding any

transaction, occurrence, or series of transactions or occurrences." *DirecTV, Inc. v. Delmore*, Civil No. 03-1370 WJ/WDS, 2004 WL 7338190, at *2 (D.N.M. Feb. 13, 2004). Essentially, "Plaintiff argues that a sufficient relationship among the [prospective plaintiffs] is established by the fact that each [prospective plaintiff was harmed by] the same general type of [constitutionally violative] conduct." *See id.* (*See also* Docs. 82–85; 97–100.) Despite Plaintiff's contention, however, the similarity of the harm the prospective plaintiffs allegedly suffered is not sufficient for permissive joinder under Rule 20. *See DirecTV, Inc.*, 2004 WL 7338190, at *2 ("[A] *similarity* among transactions or occurrences . . . does nothing to satisfy the requirement that a plaintiff's right to relief against each defendant arise out of the *same* transaction or occurrence or series of transactions or occurrences.") (emphasis added). The Court, therefore, recommends denying Plaintiff's request to join additional parties.

Even assuming the parties *could* be joined, the Court would nevertheless recommend denying the request to amend the complaint to include their claims as joinder would create undue delay and cause undue prejudice to Defendants. Plaintiff filed his Amended Complaint on March 21, 2023 (Doc. 29), and on December 6, 2023, the Court ordered NMCD Defendants to file a *Martinez* Report and appropriate motion (Doc. 54). After two extensions of time (Docs. 64; 68), NMCD Defendants filed their *Martinez* Reports and dispositive motion on April 8, 2024 (Docs. 70–73). Plaintiff now seeks to amend the complaint for the fourth time nearly a year and a half after filing his Amended Complaint and approximately two months after the parties finished briefing NMCD's motion. (*See* Docs. 77; 79.) Critically, Plaintiff seeks to amend the complaint after NMCD Defendants expended significant time and resources in creating a *Martinez* Report, discerning the degree of confidentiality needed for three different sets of exhibits, and filing a motion based on those filings. (*See* Docs. 70; 70-1–8; 71-1–6; 72-1–4; 73.) NMCD Defendants

required a total of five months to submit the *Martinez* Report and file their motion. Amending the complaint to add parties and claims would require NMCD to spend additional months not only supplementing the *Martinez* Report, the exhibits, and their motion but also replying to anything Plaintiff would file in response. The Court finds joinder would be unduly prejudicial to all Defendants and would create an undue delay.

Finally, the Court finds that any amendments would be futile. A Court may deny leave to amend where a complaint is futile. *See Frank*, 3 F.3d at 1365. The alleged declaration of Dakota Thiel relates to the way food is prepared for Plaintiff but does not allege that he exhausted the administrative remedies available to him. (Doc. 85.) Esquibel's declaration refers to a June 2024 incident with an NMCD officer, but he too fails to state whether administrative remedies have been exhausted. (Doc. 84.) Plaintiff's account of Ramirez's encounter with an NMCD officer also fails to state whether he exhausted administrative remedies. (Doc. 82 at 1–4.) Accordingly, the prospective plaintiffs' claims would be subject to dismissal as unexhausted. Moreover, Ramirez was convicted of possession of a syringe or drug paraphernalia and being present in an unauthorized or restricted area (Doc. 82 at 4, 8), but there is no evidence that he has successfully overturned those convictions, so his challenge would be subject to dismissal as barred under *Heck*. Thus, the Court finds that any amendments would be futile.

Not only does the exceptional difficulty of "multiple-plaintiff prisoner litigation militate against permissive joinder" in this matter, but the prospective plaintiff's claims also do not arise from the same transaction or occurrence as Plaintiff's as is required for permissive joinder under Rule 20. *Bastian*, 2023 WL 4182806, at *2; *see DirecTV*, 2004 WL 7338190, at *2. Even assuming joinder were permitted, amending the complaint to include the prospective plaintiffs' claims would be unduly prejudicial, create an undue delay, and be futile. The Court therefore recommends

denying Plaintiff's request to join parties and amend his complaint.

      *ii.*     *Plaintiff cannot bring a class action on behalf of the parties he seeks to join.*

Plaintiff cannot bring a class action on behalf of anyone else, including the individuals he seeks to join to his case. In *Fymbo v. State Farm Fire and Cas. Co.*, the Tenth Circuit reviewed a district court's dismissal of a pro se complaint that brought a class action suit against the defendant. 213 F.3d 1320, 1320–21 (10th Cir. 2000). The Tenth Circuit did "not hesitate to affirm the district court's decision that [the plaintiff] cannot adequately represent the putative class." *Id.* at 1321. The Tenth Circuit highlighted that Federal Rule of Civil Procedure 23(a)(4) requires a class representative to "fairly and adequately protect the interests of the class" and that a "litigant may bring his own claims to federal court without counsel, but not the claims of others." *Id.* The Tenth Circuit determined that a pro se litigant cannot bring the claims of others in a class action "because the competence of a layman is 'clearly too limited to allow him to risk the rights of others.'" *Id.* (citation omitted). The Court finds Plaintiff's request to certify a class in this matter presents an identical situation. Therefore, the Court recommends denying Plaintiff's request to certify his case as a class action on behalf of the individuals he seeks to join, or any other individuals.

      *iii.*     *Plaintiff's claims lack sufficient merit to warrant pro bono counsel.*

"[T]here is no right to appointment of counsel in a civil rights case and federal district courts lack the authority to coercively appoint counsel to represent indigent prisoners in cases brought under 42 U.S.C. § 1983." *Blake v. Geo Group, Inc.*, Civ. No. 17-807 MIS/KK, 2022 WL 4099238, at *1 (D.N.M. Mar. 18, 2022) (citing *Mallard v. U.S. District Court*, 490 U.S. 296, 300–02 (1989)). "However, in certain exceptional circumstances, a court may request the voluntary assistance of counsel in such cases pursuant to 28 U.S.C. § 1915(e)(1)." *Id.* (citing *Sweat v. Rickards*, 712 F. App'x 769, 778 (10th Cir. 2017)). In considering whether to request counsel, a

court must consider "the merits of the litigant's claims, the nature of the factual issues raised in the claims, the litigant's ability to present his claims, and the complexity of the legal issues raised by the claims." *Id.* (citation omitted). A plaintiff bears the burden of convincing a court that the factors weigh sufficiently in his favor to warrant it to request pro bono counsel on his behalf. *Id.* (quoting *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004)).

Plaintiff has a well-established history of understanding the issues in his case and appears to be able to represent himself capably. Indeed, Plaintiff obtained the 2016 settlement agreement regarding his halal meals representing himself pro se. Plaintiff has also demonstrated he is capable of responding to Defendants and submitting filings as necessary throughout this case, from requesting the Court order service on Defendants to his various filings related to NMCD's motion to dismiss in part and partial summary judgment. (Docs. 37–38; 47; 80–85; 93–94; 96–100.) Therefore, the Court finds that the "factual and legal issues presently before the Court are not so complex or momentous that it would be fundamentally unfair to require Plaintiff to proceed without counsel" and recommends that his request for appointment of counsel be denied. *See Blake*, 2022 WL 4099238, at *2.

    iv.    *This matter is not eligible for the appointment of a special master.*

[Federal] Rule [of Civil Procedure] 53 authorizes a court to appoint a master only to (A) perform duties consented to by the parties; (B) hold trial proceedings and make or recommend findings of fact on issues to be decided without a jury if appointment is warranted . . . ; or (C) address pretrial and posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district.

*Franklin v. Anaya*, Civ. No. 19-899 KWR/GBW, 2024 WL 3488007, at *1 (D.N.M. July 19, 2024). (quoting Fed. R. Civ. P. 53) (quotation marks omitted).

Plaintiff asks the Court to appoint a special master "to look into all the abuses of like violations in the complaint . . . and allow this master to report on how much complaints, and

grievances, went up [since] the promotions of [two Defendants]." (Doc. 82 at 5.) Defendants do not consent to a special master performing any duties in this matter. (Docs. 102; 106.) Additionally, Plaintiff does not explain why appointment is warranted or why the matter for which he requests a special master cannot be effectively and timely managed by the judges assigned to this matter. Therefore, Plaintiff's request fails to satisfy any of the statutory requirements for appointing a special master, and the Court recommends denying the request.

      v.    *The Court recommends denying Plaintiff's requests for miscellaneous relief.*

Plaintiff appears to request that the Court deny any requests from Defendants that he not be provided additional time to respond to any given filing. (Doc. 93.) After reviewing the docket, the Court highlights that Plaintiff has never sought additional time to respond to any filing, and Defendants have never asked the Court to deny him additional time to file. The Court's best estimation of Plaintiff's request is that he wants to restrict Defendants' ability to oppose any motion requesting additional time to respond he *might* file—i.e., he requests that the Court impose a filing restriction on Defendants. To be sure, filing restrictions are appropriate under certain, limited conditions, but an absolute filing prohibition is not proper. *See McMurray v. McCelmoore*, F. App'x 43, 45 (10th Cir. 2011) (stating that filing restrictions are appropriate where there is a history of abusive litigation, there is a process for obtaining permission to file, and the litigant receives an opportunity to oppose the order before it is instituted). Accordingly, the Court recommends declining to impose filing restrictions on Defendants' ability to oppose any request for additional time to respond to filings Plaintiff may submit in the future.

Plaintiff has also requested the Court order his grievances be considered in a process other than the administrative system available to him as an inmate. (Doc. 96 at 4.) Plaintiff does not, however, explain whether he has a specific process in mind or whether he would like the Court to

select or fashion one. In any event, the Court highlights that Plaintiff is already availing himself of an alternative process—the state habeas process in which he is challenging the disciplinary convictions. *See supra* III.B. note 5. Additionally, to the extent Plaintiff is requesting the Court select or fashion an alternative method, the Court interprets it as a renewed request for a special master to investigate his claims, which the Court has already recommended be denied above. *See supra* V(C)(iv). Accordingly, the Court recommends denying this request.

Plaintiff also contends that grievances are often left unanswered by NMCD but fails to make a claim based on that allegation. (Doc. 96 at 11–13.) However, based on review of the *Martinez* Report and the exhibits attached to the three iterations of the Report, the Court finds that NMCD responded to every grievance Plaintiff submitted related to the claims he raised in his Amended Complaint. *See supra* Sections III(A)–(E). The Court interprets Plaintiff's contention as challenging the grievance policy itself and recommends denying Plaintiff's challenge for the same reasons it denied his challenge to the policy's constitutionality. *See supra* Section V(A)(vi).

Lastly, Plaintiff requests that the Court enter default judgment against Summit Food Service Defendants. (Doc. 97.) "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). As Summit Defendants' response shows, they have been active participants in this matter. (*See* Doc. 108 at 1–2 (referencing Summit Defendants' activity on the docket).) Indeed, counsel for Summit Defendants was the first to appear for *any* defendants in this matter. (Doc. 34.) Therefore, it is clear that Summit Defendants have not "failed to plead or otherwise defend" against Plaintiff's claims for relief against them. Fed. R. Civ. P. 55(a). Accordingly, the Court recommends that Plaintiff's request to enter default judgment against Summit Defendants be denied.

## VI.      Conclusion

For the reasons above, the Court recommends granting Defendants' Motion to Dismiss in Part, Motion for Partial Summary Judgment and Memorandum of Law in Support. (Doc. 73.)

The Court recommends dismissing without prejudice Plaintiff's claims regarding his halal meals as unexhausted and all claims against Defendants Hatch, Frazier, Jackson, and Jones.

The Court further recommends dismissing with prejudice plaintiff's following claims: compensatory damages except as to the March 2021 Incident; injunctive relief against individual-capacity defendants; compensatory damages against official-capacity defendants; and claim challenging NMCD policy.

The Court also recommends granting summary judgment in Defendants' favor and dismissing without prejudice Plaintiff's claim related to his disciplinary actions because they are barred under *Heck*. The Court further recommends granting summary judgment and dismissing with prejudice Plaintiff's claim regarding his requests for Muslim pastoral visits for failure to demonstrate a substantial burden on his religious exercise.

Additionally, the Court recommends denying Plaintiff's various motions (Docs. 82; 83; 93; 94; 97–99) and the miscellaneous relief requested therein.

Lastly, the Court recommends denying the motions filed in the member case. (1:22-cv-0279 (Docs. 30; 32).)

**IT IS THEREFORE RECOMMENDED** that Defendants' Motion to Dismiss in Part, Motion for Partial Summary Judgment and Memorandum of Law in Support (Doc. 73) be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that the following claim be **DISMISSED WITHOUT PREJUDICE**: his religious discrimination claim as it relates to halal meals and all

claims against Defendants Hatch, Frazier, Jackson, and Jones.

**IT IS FURTHER RECOMMENDED** that the following claims or requests for relief be **DISMISSED WITH PREJUDICE**: Plaintiff's request for compensatory damages except as to the March 2021 Incident; claims for injunctive relief against individual-capacity Defendants; claims for money damages against official-capacity Defendants; Plaintiff's challenge to the NMCD grievance policy.

**IT IS FURTHER RECOMMENDED** that summary judgment be **GRANTED** in Defendant's favor and the Court **dismiss without prejudice** Plaintiff's claims related to the March 2021 Incident and 2022 rape disciplinary convictions and the Court **dismiss with prejudice** Plaintiff's religious discrimination claim related to Muslim pastoral visits.

**IT IS FURTHER RECOMMENDED** that Plaintiff's motions requesting miscellaneous relief be **DENIED**. (Docs. 82–83; 93–94; 97–100.)

**IT IS FURTHER RECOMMENDED** that Plaintiff's motions filed in the member case be **DENIED**. (1:22-cv-0279 (Docs. 30; 32).)

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the 14-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
DAMIAN L. MARTINEZ
UNITED STATES MAGISTRATE JUDGE

33